# Jackson v. Schine Lexington Corporation.

November 14, 1947.

Chester D. Adams, Judge.

Frank S. Ginocchio for appellant.

Stoll, Muir, Townsend, Park & Mohney for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Reversing.

Appellant, plaintiff below, filed suit against appellee to recover damages for personal injuries suffered when she fell in the lobby of the Kentucky Theatre at Lexington. At the close of plaintiff's evidence, a verdict

was directed for defendant on the ground that she had failed to prove the theatre was operated by it. On this appeal it is insisted that the trial court erred in excluding certain evidence of ownership and operation of the premises, and in directing the verdict.

Plaintiff attempted to prove by an admission in a pleading and by her own testimony that defendant, Schine Lexington Corporation, owned and operated the theatre. We will first consider the competency of these two items of evidence.

Plaintiff's attorney testified he had received from defendant's attorney a copy of an answer in this action which admitted the operation of the Kentucky Theatre. An' objection to his testimony was sustained, and by avowal he introduced the copy of the pleading.

It appears that this answer, containing a clear admission, was not verified and was not filed. Other filed pleadings of defendant specifically denied the ownership and operation of this theatre, and alleged that some other company controlled it. The question is whether or not a pleading which was not filed, was not signed by defendant, and which contained an admission not shown to have been expressly authorized, is binding on it.

The general rule is that an attorney has no power to prejudice his client by admissions of fact made out of court. Though he may be the agent of his client, such agency does not carry the implication of authority to make binding admissions other than in the actual management of the litigation. 20 Am. Jur., Evidence, Section 592. A written admission has no more efficacy than an oral one. See 20 Am. Jur., Evidence, Section 1198, and extensive note in 97 A. L. R. 374.

This court has followed the above general rule in Rankin v. Maxwell's Heirs, 9 Ky. 488, 2 A. K. Marsh. 488, 12 Am. Dec. 431, and Wyles, Commissioner, v. Berry, 116 Ky. 377, 76 S. W. 126. In those cases it was recognized that an unsworn or unsigned pleading is not competent evidence as an admission or confession against the party on whose behalf such pleading is drafted. See also 14 A. L. R. 22 and 90 A. L. R. 1393. Though

there are cases from other jurisdictions to the contrary, we consider this rule sound.

It is true that a pleading which has been signed or verified by a party to the litigation may constitute an admission the same as any other executed writing, and whether or not it is filed would be immaterial. We must bear in mind, however, that a pleading drawn by an attorney is simply a part of the legal proceedings, which aim at reaching an issue over disputed facts. Such instrument until filed is ineffective as a pleading and could have no binding effect otherwise upon the client unless the attorney had authority to conclude his principal. Without any showing that the attorney was authorized to make such written admission for his client, it cannot be used against him. For this reason, the court properly sustained an objection to this evidence.

Our next question of competency involves the following testimony. Plaintiff was asked this question and made this answer:

"Will you please state, if you know, who owned and operated the Kentucky Theatre in Lexington, Kentucky, on the 11th day of July, 1943, when you fell in that theatre?

"Schine Lexington Corporation."

This was objected to, the court sustained the objection and admonished the jury not to consider the answer. Appellee insists that the court properly rejected this evidence because the answer was a mere conclusion of the witness.

It is very difficult, if not impossible, to draw a line of distinction between a fact, and an inference or opinion based on the existence of facts. In many cases, the conclusion of a witness is necessary and proper where his statement must bring together complex factors which cannot be detailed. On the other hand, it is argued that the witness will usurp the function of the court or jury where he is permitted to state as a fact the ultimate conclusion in question. In line with this theory, there are some cases from other jurisdictions which hold that where ownership is a disputed question of vital importance, the witness should not be permitted to give his opinion or conclusion without stating the facts upon

which it is based. 20 Am. Jur., Evidence, section 772 and 775; 32 C. J. S., Evidence, sec. 464.

This court has held that a statement concerning the sole and exclusive ownership of a business is a mere conclusion and should be given little or no weight, but the question of competency was not raised. Guthrie et al. v. Foster et al., 256 Ky. 753, 76 S. W. 2d 927. We have held a statement by a foreman that certain truck drivers "were working for defendant company" was a conclusion of the witness, and an objection was properly sustained. Clendenin v. Colonial Supply Co., Inc., 267 Ky. 544, 102 S. W. 2d 992. We do not have, however, an established rule in this state on the question.

As pointed out by Judge Learned Hand in Central R. Co. of New Jersey v. Monahan, 2 Cir., 11 F. 2d 212, 214:

"The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness. It is hardly ever reversible error to admit such evidence; its foundation may generally be as conveniently left to cross-examination. Every judge of experience in the trial of causes has again and again seen the whole story garbled, because of insistence upon a form with which the witness cannot comply, since, like most men, he is unaware of the extent to which inference enters into his perceptions."

As noted in the discussion of Rule 401, American Law Institute's "Model Code of Evidence," the attempt to distinguish between fact and opinion is likely to result in profitless quibbling. The right to cross-examine ordinarily will protect the opposing party from any prejudicial effect which an opinion or conclusion of a lay witness may have. We must bear in mind that we are not considering the weight of the testimony but its admissibility. If a witness is unable to justify his conclusion, then it amounts simply to a surmise or guess which would have little or no probative value as evidence.

Professor Wigmore in his excellent treatise of the law of evidence, Wigmore on Evidence, Third Edition, devotes a generous portion of his work to the history,

development and applicability of the so-called "Opinion Rule." He analyzes the objections to opinion testimony by lay witnesses and rejects them all as unsound. He concludes by recommending the entire abolition of the rule. A summation of his analysis is thus stated in Wigmore on Evidence, Third Edition, Volume VII, Section 1929:

"The opinion rule day by day exhibits its unpractical subtlety and its useless refinement of logic. Under this rule we accomplish little by enforcing it, and we should do no harm if we dispensed with it. We accomplish little, because, from the side on which the witness appears and from the form of the question, his answer, i. e. his opinion, may often be inferred. We should do no harm, because, even when the final opinion or inference is admitted, the inference amounts in force usually to nothing unless it appears to be solidly based on satisfactory data, the existence and quality of which we can always bring out, if desirable, on cross-examination. Add to this that, under the present illiberal application of the rule, and the practice as to new trials, a single erroneous ruling upon the single trifling answer of one witness out of a dozen or more in a trial occupying a day may overturn the whole result and cause a double expense of time, money, and effort; and we perceive the absurdly unjust effects of the rule. Add, finally, the utter impossibility of a consistent application of the rule, and the consequent uncertainty of the law, and we understand how much more it makes for injustice rather than justice."

In this particular case, plaintiff was not given an opportunity to explain the basis for her positive statement that defendant owned and operated the theatre on the date she was injured. Whether or not she would have been able to do so, we are not advised. It is our opinion, however, that her statement, even though in essence a conclusion, should not have been rejected on the ground of incompetency. Standing by itself there is grave doubt as to its sufficiency in establishing the fact to be proved. Whalen's Adm'x v. Sundell et al., 303 Ky. 752, 199 S. W. 2d 426. That question, however, is not the one before us. In the interest of practical justice, we are inclined to the view that the court below

improperly rejected this testimony, and the judgment must be reversed for that reason.

There are two other items of evidence introduced by plaintiff concerning which we think it advisable to make reference. The question of competency has been raised, but in our opinion the testimony was properly admitted by the court.

Plaintiff testified that she observed a sign near the entrance of the theatre which had on it either "Schine Theatre" or "Schine's Kentucky." The problem is whether or not the word "Schine" appearing on or near the theatre is sufficient to raise a presumption that defendant was the owner or operator.

There are cases in this jurisdiction wherein we have held that a motor vehicle bearing the name of the alleged owner and other distinguishing marks raises a presumption that the vehicle is actually owned by that person or company and is being operated on the owner's business by his agent. See Webb v. Dixie-Ohio Express Co., Inc., 291 Ky. 692, 165 S. W. 2d 539. It is also the general rule that the identity of names raises a presumption or its prima facie evidence of identity of the person. 20 Am. Jur., Evidence, Section 204. We do not have in this case, however, an identity of the name appearing on the sign (which appellant herself was not sure of) and the named defendant. The two have in common the word "Schine," but that is all. We believe it would be extending the doctrine of identity beyond its reasonable scope, if the simple similarity of part of a name of a corporation would create a presumption in favor of the party with the burden of proof.

A presumption is based upon the proof of one fact which has a legitimate tendency to lead the mind to the conclusion that the fact to be proven exists. Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S. W. 2d 828. The proven fact, however, must do more than suggest the conclusion. It must be an impelling force which makes it reasonable to assume that the disputed fact is true. A mere similarity of part of a name will not establish a presumption. The proper test to be applied in such cases is thus stated in Wigmore on Evidence, Third Edition, Volume II, Section 411:

"The force of the inference depends on the *degree of necessariness of association of that mark with a single object.*" (Author's emphasis)

As far as we know, the name "Schine" may be the true name or assumed name of any number of individuals or corporations. The single word is not sufficiently descriptive of defendant corporation. It is suggestive, but the proven fact does not carry us forward to the conclusion.

Plaintiff also testified that the portion of the ticket stub which she retained had the name "Schine" on it. What we have said above covers this proof. It adds nothing by way of circumstance upon which a **reasonable** inference of identity may be based.

The court below properly held that the two foregoing items of evidence, standing alone, were not sufficient to raise a presumption that the theatre was owned or operated by defendant at the time of plaintiff's injury.

For the reason that the court excluded appellant's testimony that appellee owned and operated the theatre as being a mere conclusion on her part, the judgment is reversed, with directions to grant appellant a new trial, and for proceedings consistent with this opinion.